UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO: 1:16-CV-00131

JEFFREY QUEEN                                                                       PLAINTIFF

V.

CITY OF BOWLING GREEN and                                                DEFENDANTS
DUSTIN ROCKROHR

## Memorandum Opinion and Order

This matter is before the Court on Defendants' Motion for Summary Judgment [DN 42]. Fully briefed, this matter is ripe for decision. For the following reasons, the Court holds that Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

## I. Background

Plaintiff Jeffrey Queen brings this lawsuit against Defendants, the City of Bowling Green (the "City") and Captain Dustin Rockrohr. Queen worked for five years as a firefighter for the City. During the course of his employment, Queen observed his coworkers and superiors engage in behavior that was racist, sexist, homophobic, and discriminatory against non-Christians.

First, Queen alleges that he was discriminated against on the basis of his religious beliefs. Queen is an atheist. When he began his training program, Assistant Chief of Training Norman Simpson referred to individuals with non-Christian beliefs as "pagans." (Compl. [DN 1-2] ¶ 16.) Other firefighters asked Queen which church he belonged to. After training, a firefighter asked whether Queen had been "saved." (*Id.* ¶ 19a.) Chief Colson told Queen that he needed to join a church and Chief Campbell advised Queen to "get right with Jesus." (*Id.* ¶ 19c.) Captain Barnard stated that atheists "deserved to burn," and Chief Frye said, "I'll be damned if I work with [atheists]," and he was "sure as hell glad none of those fuckers work here." (*Id.* ¶ 19d.) Lastly,

Queen was forced to participate in bible study during dinner at the fire station. Queen states that he acknowledged that he was an atheist in early 2016, and Captain Smith and another firefighter threatened to "burn his house down." (*Id.* ¶ 23.)

Queen was also harassed by coworkers who accused him of being homosexual. Queen does not identify as homosexual. To the contrary, he is married to a woman with whom he has a child. Still, Queen claims that he was called a "faggot" on a nearly daily basis. (*Id.* ¶ 31a.) His coworkers also teased that they thought Queen did not like women and called him a "queer." (*Id.* ¶ 24.) Queen also observed his fellow firefighters making general discriminatory remarks about homosexuals, saying that they would not touch them because they "probably had AIDS." (*Id.* ¶ 24e.) Queen was told, "If a homo works here, we'll make sure he dies in a fire. We'll chop his feet off." (*Id.* ¶ 24f.) On another occasion, members of Queen's crew declined to give medical care to a man experiencing chest pain after learning that the man was gay.

Queen also observed his coworkers and superiors within the Fire Department making other discriminatory comments. For example, several individuals displayed discriminatory animus towards other races. People within the Fire Department referred to African-Americans as "thugs," "hoodrats," and "niggers". Muslims were called "towelheads," "sand niggers," "jihadis," and "ali-babas." Queen also overhead his coworkers saying statements such as "we need to ship them all back where they came from" and "let the bombs torch them, they are going to hell anyway" when talking about Muslims. (*Id*. ¶ 19e). In 2015, a fellow firefighter burned a copy of the Quaran in front of the Fire Department while stating, "burn them all." (*Id*. ¶ 21f.)

In 2012, Queen complained to Defendant Dustin Rockrohr about the inappropriate slurs directed at him and other minorities. The next day, Captain Rockrohr called Queen at home and advised him that he had spoken to the Fire Chief and they believed Queen should seek other

employment because it was "not working out" for him to continue at the Fire Department. (*Id.* ¶ 27.) Captain Rockrohr also told Queen to "get with the program if you want to continue being a firefighter." (*Id.* ¶ 28.) Captain Rockrohr did not, however, take steps to address the subject matter of Queen's complaint. To the contrary, Queen states that after he complained, he was subjected to even more hostile behavior. On one occasion, Queen was tripped as he walked through the fire station.

Queen also made other efforts to complain about the treatment he received at the Fire Department. He filed two anonymous complaints with the Fire Department's Human Resources Department – one in the spring of 2013 and another in the fall of 2014. Queen does not believe that the Human Resources Department investigated his complaints. He also attempted to use the City's ethics hotline to complain in 2015. Again, Queen contends that his complaints were never investigated.

By February 2016, Queen claims that the harassment he endured at the Fire Department resulted in a level of anxiety that required a leave of absence. He was granted leave under the Family and Medical Leave Act ("FMLA"). While on leave, Queen received multiple phone calls from his superiors at the Fire Department asking for information about why he was absent. Eventually, Queen's fear surrounding the hostility from his coworkers caused him to resign from the Fire Department in May 2016.

Queen claims that because of the hostile work environment at the Fire Department, he was constructively discharged from his employment. His Complaint alleges claims of hostile work environment based on religion (Count I) and gender (Count II), constructive discharge (Count III), violations of the FMLA (Count IV), and retaliation (Count V). Defendants seek summary judgment in their favor on all claims.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

### A. Hostile Work Environment based on Religion – Count I

First, in Count I of the Complaint, Queen claims that Defendants subjected him to a hostile work environment on the basis of his religion in violation of the Kentucky Civil Rights Act ("KCRA"). Hostile work environment claims under the KCRA are analyzed in the same manner as federal claims under Title VII. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, (6th Cir.

2000). To establish a prima facie case of hostile work environment, Queen must establish the following five elements: (1) he was a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his protected status; (4) the harassment was sufficiently severe or pervasive to affect a term, condition, or privilege of employment; and (5) his employer knew or should have known about the harassing conduct but failed to take corrective measures. *Fullen v. City of Columbus*, 514 Fed. App'x 601, 606−07 (6th Cir. 2013). The Court will discuss each element of Queen's hostile work environment claim in turn.

### 1. Protected Class

Although atheism is the absence of religious beliefs, it is still a protected class for purpose of Title VII. *Reed v. Great Lakes Cos.*, 330 F.3d 931, 934 (7th Cir. 2003).

### 2. Unwanted Harassment

Defendants argue that Queen cannot prove the religious harassment he experienced was unwanted. Rather, Defendants contend that jokes, pranks, and teasing are all part of the fraternal environment at the Fire Department that Queen enjoyed and participated in. However, since the Defendants are moving for summary judgment, the Court must consider the facts in a light favorable to Queen. According to Queen, none of the harassment he experienced was welcomed. As he tells it, he was interrogated about his religion by coworkers and forced against his will to participate in Bible studies. Ultimately, he claims that he was threatened and physically assaulted. For this reason, there is enough evidence for a reasonable jury to conclude that the harassment Queen experienced was unwanted.

### 3. The Harassment Based on Plaintiff's Protected Status

Defendants further argue that any alleged harassment that Queen may have experienced could not have been based on his atheism because his coworkers did not know he was atheist.

5

Several firefighters stated that Queen told them he believed like they did, attending Bible study outside of work and attending a non-denominational church. However, Queen presents facts that contradict these statements. The Complaint states, "When Queen publicly acknowledged that he was an atheist in early 2016, Captain Smith and a firefighter stated they would 'burn his house down.'" (Compl. ¶ 23.) Again, when deciding on Defendants' Motion for Summary Judgment, the Court must construe the facts in the light favorable to Queen and assume as true that Queen publicly acknowledged that he was atheist.

### 4. Severity

In deciding whether an environment is hostile or abusive, the Supreme Court instructs that courts should analyze the totality of the circumstances. *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993). A court should look at (1) the frequency of discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Id.* Further, there is both an objective and a subjective component of this analysis. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citing *Harris*, 510 U.S. at 21–22.) ("[I]n order to be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively objectionable, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.") And while the Court will view each plaintiff's claim individually, "courts need not myopically focus on only harassment directed at the individual plaintiffs, but may consider the harassment that each plaintiff experienced, witnessed, and knew about because all three could contribute to a hostile work environment." *EEOC v. East Columbus Hosts, LLC*, No. 2:14-CV-1696, 2016 WL 45947247, at *5 (S.D. Ohio Sept. 2, 2016) (citing *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 718 (6th Cir. 2012)).

Based on the facts presented in the Complaint, Queen was subjected to and witnessed regular harassment by his coworkers. Furthermore, this harassment culminated in threats against his life and a physical assault when Queen was tripped as he walked through the fire station. In conclusion, a reasonable jury could find that this constant harassment was sufficiently pervasive for a finding of hostile work environment.

### 5. Employer Liability

Taking Queen's recitation of the facts as true, the City should have known about the harassment after Queen complained on several different occasions. First, Queen's supervisor, Captain Rockrohr was made aware of the harassment Queen experienced. Queen also claims that he made multiple reports to the Human Resources Department and called the City ethics hotline. Further, Defendants have not provided any evidence at this point that would indicate any measures were taken to cure any of the harassment experienced by Queen. For these reasons, a reasonable jury could find that the City is liable for Queen's harassment.

### 6. Conclusion

Because Queen has made out a case for harassment based on religion that a reasonable jury could find created a hostile work environment, the Defendants' Motion for Summary Judgment is **DENIED** as to Queen's claim of hostile work environment based on religion in Count I of the Complaint.

### **B. Hostile Work Environment Based on Gender – Count II**

In Count II, Queen claims he was subject to a hostile work environment in violation of the KCRA on the basis of "his sex and his failure to conform to gender norms." (Compl. at 9−10.) Although he is heterosexual, Queen was often ridiculed by coworkers who suggested that he was gay. This teasing is not harassment on the basis of Queen's gender but rather on a perception of

his sexual orientation. Within its Response brief, Plaintiff acknowledges that "Courts in the Sixth Circuit have confirmed repeatedly that men can raise sexual harassment claims as long as the claim is not intended to mask a claim of sexual orientation harassment." (Pl.'s Resp. to Def.'s Mot. for Summ. J. [DN 45] at 17.) Indeed, the Sixth Circuit has categorically held that "sexual orientation is not a prohibited basis for discriminatory acts under Title VII." *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 762 (6th Cir. 2006). Further, the Sixth Circuit, in applying Title VII precedent to the KCRA, has held that the KCRA also does not protect individuals from discrimination based on sexual orientation. *Pedreira v. Ky. Baptist Homes for Children, Inc.*, 579 F.3d 722, 727 (6th Cir. 2009).

Besides harassment based on sexual orientation, there are no other allegations that Queen was harassed for failure to conform to male norms. This is also not a case of harassment based on sexual attraction by another male, such as the case that Plaintiffs cited, *Oncale v. Sundowner Offshore Servcs.*, 523 U.S. 75 (1998). Therefore, summary judgment is **GRANTED** as to Queen's claim of hostile work environment based on gender in Count II.

### C. Constructive Discharge – Count III

In Count III, the Complaint states, "Queen was constructively discharged from his employment with the Bowling Green Fire Department." (Compl. at 10.) Constructive discharge is not itself a cause of action. *Starks v. New Par*, 181 F.3d 103 (6th Cir. 1999). However, proving constructive discharge is a means of showing an adverse employment action was taken against an employee who quits rather than being terminated. *Logan v. Denny's, Inc.*, 259 F.3d 558, 568 (6th Cir. 2001).

To the extent it will be necessary to show an adverse employment action was taken against the Plaintiff, it will be up to a jury to decide whether Queen was constructively discharged by his

employer's actions. *Brooks v. Lexington-Fayette Urban County Hous. Auth.*, 132 S.W.3d 790, 807 (Ky. 2004) ("Constructive discharge presents a question of fact that, in jury trials, should be decided by the jury and not the trial court."). "The commonly accepted standard for constructive discharge is whether, based upon objective criteria, the conditions created by the employer's action are so intolerable that a reasonable person would feel compelled to resign." *Id.* Defendants are not entitled to summary judgment on the issue of constructive discharge as it may demonstrate adverse employment actions within other claims.

### D. FMLA – Count IV

Queen claims in Count IV that the Fire Department violated his FMLA rights when his manager "sought information regarding Queen's medical condition from him after his leave was approved in violation of 29 U.S.C. 2615." (Compl. at 10.) Queen testified that his captain, Eric Smith, called while he was on leave to ask the reason he was out. (Queen Dep. at 105.) FMLA-qualified employees have two avenues of recovery against noncompliant employers: the interference theory, pursuant to 29 U.S.C. § 2615(a)(1), and the retaliation theory, pursuant to 29 U.S.C. § 2615(a)(2). *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 446 (6th Cir. 2007). Queen does not specify in his Complaint what type of FMLA claim he is pursuing. Further, Queen's Response to Plaintiff's Motion for Summary Judgment does not shed light on his prima facie claim under FMLA as it only discusses the defense of qualified official immunity. Because the Plaintiff has offered no arguments from which a reasonable jury could conclude that Defendants engaged in either FMLA interference or retaliation, summary judgment is **GRANTED** to Defendants on Count IV.

### E. Retaliation – Count V

Lastly, Queen claims that he was retaliated against for complaining about the discrimination he faced at the Fire Department. He brings a claim under the KCRA against both the City and Captain Rockrohr. The KCRA states that it is unlawful for a person to "retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter." Ky. Rev. Stat. § 344.280(1). To prevail on a claim of retaliation under the KCRA, Queen must be able to prove that: (1) he engaged in a protected activity; (2) his employer knew that he did so; (3) his employer subsequently took an adverse action against him; (4) the adverse action was causally related to the protected activity. *Banks v. Bosch Rexroth Corp.*, 610 Fed. App'x 519, 532 (6th Cir. 2015). Upon the establishment of a prima facie case, the burden shifts back to Defendants "to produce evidence of a legitimate, nondiscriminatory reason for its actions." *Id.* If Defendants can meet this burden, the burden shifts once again to the Queen to show that the legitimate reason offered by the Defendants is pretext for discrimination. *Id.*

Here, Queen engaged in a protected activity when he complained about the discriminatory treatment he suffered at the Fire Department. The discrimination Queen complained of was unlawful under KRS § 344.040(a) and the KCRA states that Queen may oppose such discrimination free from retaliation. He made this complaint directly to his supervisor, Captain Rockrohr. The next day, Captain Rockrohr advised Queen to seek other employment. When Queen returned to work, he was told that he needed to report to a meeting with Rockrohr and the Fire Chief. Rockrohr also told him he needed to "get with the program" if he wanted to continue being a firefighter. (Compl. ¶ 28). The meeting with the Fire Chief was only cancelled after Queen agreed to do his best to fit in with his colleagues. Still, Queen says that after he complained, the harassment he experienced was worse than ever. A reasonable jury could find that the harassment and threats were in retaliation for his complaints regarding the workplace were in retaliation for

his complaints regarding the workplace. According to Queen, his work environment got so bad that he had to take a medical leave of absence and eventually forced him to resign. For this reason, summary judgment is **DENIED** as to Queen's claim of retaliation in Count V.

### **F. Immunity**

#### 1. Defendant Dustin Rockrohr

Defendants argue that Captain Dustin Rockrohr cannot be sued because the doctrine of qualified official immunity insulates him from lawsuits brought against him in his official capacity. Before reaching a discussion of official qualified immunity, it must be noted that most of the claims raised against Captain Rockrohr are not viable because those causes of action do not permit individual liability. First, Queen cannot bring a claim against Captain Rockrohr under the FMLA. The Sixth Circuit has held that "the FMLA's individual liability provision does not extend to public agencies." *Mitchell v. Chapman*, 343 F.3d 811, 832 (6th Cir. 2003). Furthermore, it is a general rule that "no individual liability lies for employees or supervisors under the KCRA and similar schemes." *Fugate v. Babcock & Wilcox Conversion Servs. LLC*, No. 5:14-CV-00172, 2015 WL 1758063, at * 5 (W.D. Ky. Apr. 17, 2015); *Wathen v. GE*, 115 F.3d 400, 405 (6th Cir. 1997) ("We now hold that an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII."). However, although generally there is no individual liability under the KCRA, this rule does not extend to claims of retaliation under KRS § 344.280. The KCRA retaliation statute does not mirror its Title VII counterpart but rather, it "plainly permits the imposition of liability on individuals." *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, (6th Cir. 2000).

However, Captain Rockrohr may still be immune from liability from Queen's retaliation claim under the doctrine of qualified official immunity. When sued in their official capacities,

public officers and employees enjoy "qualified official immunity." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). These public officers will not be held liable for (1) discretionary acts or functions, i.e., those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) done in good faith; and (3) within the scope of employee's authority. *Id.* "'[B]ad faith' can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position." *Id.* at 523.

In arguing that Captain Rockrohr should be protected by immunity, Defendants argue that his decision of how to handle Queen's complaint was a discretionary function, similar to the situation in *Morris v. Oldham County Fiscal Court*, 201 F.3d at 786−88. However, unlike the supervisor in that case who simply chose not to investigate the plaintiff's claims, here, Rockrohr went a step further, telling Queen he should seek other employment because it "wasn't working out" for him to continue at the Bowling Green Fire Department. A reasonable jury might find that these threats went far enough to violate Queen's clearly established right to complaint about harassment. If a jury finds that Captain Rockrohr did not act in good faith in handling Queen's complaints, he would not be protected by qualified official immunity.

Because Captain Rockrohr cannot be held individually liable for Queen's claims of hostile work environment, summary judgment is **GRANTED** to him on Count I. However, he may be individually liable under the KCRA for retaliation and not protected by qualified official immunity so summary judgment is **DENIED** as to Count V for retaliation.

## 2. Defendant City of Bowling Green

The City argues all claims against it should be dismissed under the doctrine of qualified official immunity. According to the City, it cannot be liable for discretionary acts. However, in

Kentucky, qualified official immunity only protects "public officers and employees for acts performed in the exercise of their discretionary functions." *Yanero*, 65 S.W.3d at 521. It does not protect municipalities such as the City of Bowling Green.

Defendants also invoke the Claims against Local Government Act which provides that local governments cannot be held liable for any exercise of judicial or legislative authority. Ky. Rev. Stat. § 65.2003(3). However, none of the alleged misdeeds in this case were in any way related to any judicial or legislative exercise of authority. Therefore, the Claims against Local Government Act does not shield the City from liability for the alleged harassment suffered by Queen. Summary judgment is **DENIED** to Defendant City of Bowling Green on the issue of immunity.

### G. *Faragher/Ellerth* Defense

Defendants also claim that summary judgment on Count I should be granted in their favor because of their ability to prove the defense set forth in *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). In those cases, the Supreme Court held that an employer is subject to vicarious liability to a victimized employee for an actionable hostile work environment created by a supervisor with immediate authority over the employee. *Ellerth*, 524 U.S. at 765. However, when no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, consisting of two elements: (1) that the employer exercised reasonable care to prevent and promptly correct any harassing behavior; and (2) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Id.*

At this stage in the litigation, the Court cannot grant summary judgment to the City on the *Faragher/Ellerth* defense because the City has not proven that it exercised reasonable care to promptly correct any harassing behavior. Assuming the facts as presented by the Plaintiff, Queen made various attempts to report the harassment he experienced at the Fire Department –speaking with Captain Rockrohr, filing two complaints with the Human Resources Department, and calling into the City's ethics hotline. The City states that there are no records of Queen's complaints to HR. Further, Deborah Jenkins, the City Auditor, made an investigation following Queen's call to the ethics hotline and found his complaints to be unsubstantiated. However, these facts are contradicted by Queen, whose story must be accepted as true on summary judgment by the Defendants. According to Queen, all of these complaints fell on deaf ears as none of the grievances he alleged were investigated or corrected. For this reason, summary judgment is **DENIED** on the issue of City's use of the *Faragher/Ellerth* defense.

## IV. Conclusion

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. Summary judgment is **GRANTED** to Defendants on Queen's claim of hostile work environment on the basis of sex in Count II and claims under the FMLA in Count VI. Further, summary judgment is **GRANTED** to Defendant Dustin Rockrohr on Queen's claim of hostile work environment on the basis of religion in Count I. As to all other claims, summary judgment is **DENIED**.

*Joseph H. McKinley*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

July 20, 2018

cc: counsel of record